IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LEO BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:14cv1210-TFM |
| | ) | (WO) |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.  Introduction**

Plaintiff Leo Brown ("Plaintiff" or "Brown") applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, alleging that he is unable to work because of a disability.  His application was denied at the initial administrative level.  Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ concluded that Brown was not under a "disability" as defined in the Social Security Act.  The ALJ, therefore, denied Plaintiff's claim for benefits.  The Appeals Council rejected a subsequent request for review.  Consequently, the ALJ's decision became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See  Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

by the United States Magistrate Judge. The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). Based on the court's review of the record in this case and the parties' briefs, the court concludes that the Commissioner's decision should be AFFIRMED.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

> To make this determination,[2] the Commissioner employs a five-step, sequential

evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** Brown was 64 years old at the time of the hearing, is a high school graduate, and holds a Bachelor of Arts in Business Education. R. 37. Brown has prior work experience as teacher aide and analyst manager. R. 24. Brown alleges that he became

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

3

disabled on June 1, 2011, from back and leg pain.  R. 39.  After the hearing, the ALJ found that Brown suffers from severe impairments of chronic low back pain due to degenerative disc disease, degenerative joint disease, myofascial pain syndrome, bilateral carpal tunnel syndrome, hypertension, and reflux, as well as a non-severe impairment of depression.  R. 21.  The ALJ found that Brown is capable of returning to his past relevant work as a teacher aide and analyst manager.  Specifically, the ALJ found that Brown "has the residual capacity to perform light work as defined in 20 CFR 404.1567(b) except he is limited to no more than occasional pushing and pulling with the left extremity, is limited to no more than occasional stooping, climbing, balancing, kneeling, crouching, and crawling, and must avoid all work around hazards such as heights and dangerous machinery."  R. 22.  The ALJ concluded that Brown is able to return to his past relevant work as a teacher aide and analyst manager.  R. 24.  Accordingly, the ALJ concluded that Brown is not disabled.  R. 24-25.

**B.  Plaintiff's Claim**.  As stated by Plaintiff, the sole issue for the court's review is whether "[t]he ALJ erred in his consideration of the opinion of Mr. Brown's treating physician, Dr. Montgomery Peden." Doc. 10, Pl's Br. at 2-3.

### IV. Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to his past work.  *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990).  In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1)

4

objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and her family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). The ALJ must also state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments.

> Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.

42 U.S.C. § 405(b)(1). Within this analytical framework, the court will address Brown's claims.

Brown argues that the ALJ improperly discounted the treating physician's opinion about the severity of his limitations. In April 2012, Dr. Montgomery Peden, an internist, completed a Clinical Assessment of Pain form, in which he found that Brown's pain "is present to such an extent as to be distracting to adequate performance of daily activities or work," that physical activity "greatly increase[s] pain and to such a degree as to cause distraction from tasks or total abandonment of task[s]," and that "[d]rug side effects can be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc." R. 311. Dr. Peden also completed a Physical Capacities Evaluation form, in which he found that Brown is able to lift or carry no more than twenty pounds occasionally to fifty

5

pounds frequently, sit no more than four hours, and stand no more than one hour during the course of a normal workday. R. 312. In addition, Dr. Peden found that Brown can never push or pull arm and/or leg controls, can never climb stairs or ladders, can rarely engage in gross or fine manipulation, bend, reach, or stoop, and/or work around hazardous machinery, and can occasionally operate motor vehicles. *Id*. He concluded that Brown would be absent from work four days per month. *Id*. Dr. Peden noted that his findings were based on Brown's long history of chronic lower back pain. *Id*.

The law is well-settled; the opinion of a claimant's treating physician must be accorded substantial weight unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The Commissioner, as reflected in his regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)). The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error. *Broughton*, 776 F.2d at 961-2; *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).

However, there are limited circumstances when the ALJ can disregard the treating physician's opinion. The requisite "good cause" for discounting a treating physician's

6

opinion may exist where the opinion is not supported by the evidence, or where the evidence supports a contrary finding. *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). Good cause may also exist where a doctor's opinions are merely conclusory; inconsistent with the doctor's medical records; or unsupported by objective medical evidence. *See Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr*, 816 F.2d at 581.

After reviewing all the medical records, the ALJ assigned "little weight" to the opinion of Dr. Peden because the objective medical records do not support his assessment that Brown suffers from such extreme limitations. R. 24. The ALJ's determination is supported by substantial evidence.

On September 20, 2011, Brown went to Dr. Peden complaining of left shoulder and chest pain. R. 366. Dr. Peden noted that "Lyrica helps neuropathy pain." *Id*. Dr. Peden subsequently ordered a bone scan. The results of a bone scan conducted at Enterprise Medical Center on November 4, 2011, were negative. R. 319, 378. On October 27, 2011,

7

Brown went to Dr. Peden with complaints of left shoulder pain. R. 316. Dr. Peden noted that Brown was not taking arthritis pills and prescribed Mobic. R. 316.

On December 11, 2011, Dr. Sam Banner, a consultative physician, conducted an examination of Brown. Dr. Banner summarized Brown's history as follows:

> Claimant has chronic low back pain with history of two lumbar surgeries. The first one was in 1997 to repair a HNP at L5-S1. The second was in 2007 again at L5-S1, both by Dr. Barnard, orthopedist. Claimant complains of continued left leg pain and has difficulty with prolonged sitting or standing. He complains of weakness and a heavy feeling in left leg and foot. He has history of bilateral carpal tunnel syndrome and wears wrist splints, treated by VA. He complains of pain, especially at night, in his wrists. He also complains of a condition caused by parasites in both eyes.

R. 300. Dr. Banner found that Brown's range of motion was somewhat limited, especially on the left side. For example, Dr. Banner's examination indicated that Brown was able to flex his left hip no more than 60 degrees, bend his back forward no more than 20 degrees, squat very minimally, and that his sensation to pinprick was diminished on the left lower extremity. R. 302. In addition, he found that Brown's test for seated leg raising was positive in the left leg. R. 303. Despite these limitations, Brown was able to walk at a normal step, height, and length, and all muscle groups were 5/5 in the upper and right lower extremities and 4/5 in the left lower extremities. R. 302. Dr. Banner diagnosed Brown as suffering from chronic low back pain, bilateral carpal tunnel by history, pingueacula bilateral, and hypertension. R. 303.

Brown returned to Dr. Peden for a follow-up appointment on February 2, 2012. The internist noted Brown had some left foot pain and prescribed Lortab. R. 315. In June 2012,

8

an electrodiagnostic lab test indicated a normal study of bilateral upper extremities. R. 323, 358.

Brown began receiving medical treatment through the Veterans Health Administration in 2012. On August 8, 2012, Brown went to Central Alabama Veterans Health Care System ("CAHCS") with complaints of "chronic pain in left leg and left pain today - 8" and left hand pain. R. 352. Dr. Jennifer F. Marsden, a family practitioner, noted that Brown has a history of an "inad[equate] resp[onse] pain on daily lortab 7.5, 75 mg lyrica daily," that he was "unab[le] [to] take lyrica before driving," and that Gabapentin was "no good." R. 333. Dr. Marsden listed Brown's "active problems" as disc degeneration NOS, esophageal reflux, adjustment disorder with mixed anxiety and depressed mood, dyslipidemia, DJD, allergies, hypertension, male erectile disorder, hypertrophy of prostate, myofascial pain syndrome, pain in joint involving hand, colonic polyps, carpal tunnel syndrome, low back pain, and tendinitis. R. 334. The physician renewed Brown's prescription for Lyrica and increased his prescription of Lortab to three times daily. R. 333-334, 407. In addition, a staff dietitian noted that Brown walks "2 to 3 miles 2 times a week." R. 348.

On September 26, 2012, Brown received trigger point injections to the left thoracic and cervical area. R. 574-575. On October 11, 2012, Brown complained of leg pain and requested a "more stable back brace." R. 570. A nurse noted that he "feel[s] like [he is] walking on crushed ice" and that he "was hoping to get some help before [he] can't feel anything in both feet." R. 570. The nurse referred him to Dr. Marsden. R. 571.

On November 24, 2012, a nerve conduction study indicated "electrodiagnostic

9

evidence of left L5, S1 radiculopathy, mild to moderate intensity." R. 403, 604. On November 29, 2012, CAHCS personnel completed a Health Summary, which includes a Disability Benefits Questionnaire. R. 434. When summarizing Brown's back condition, an examiner indicated that Brown has "objective evidence of painful motion" which begins at 40 degrees of forward flexion, 10 degrees of extension, 10 degrees of right lateral flexion, 15 degrees of left lateral extension, 10 degrees of right lateral rotation, and 15 degrees of left lateral rotation. R. 434-436, 542-544. The examiner found that "guarding and/or muscle spasm is present, but do not result in abnormal gait or spinal contour." R. 438, 546. A sensory exam, however, indicated decreased sensation in the left lower leg, ankle, and foot. R. 439. The examiner found the severity of radiculopathy along the right side is mild and along the left side is moderate. R. 441, 549, 566. An exam also indicated mild incomplete paralysis of the sciatic nerve along the left side. R. 454 , 561. Despite these limitations, the examiner indicated Brown's muscle strength, including hip and ankle flexion and knee and toe extension, were of normal strength at 5/5. R. 438. In addition, the examination indicated no muscle atrophy. *Id*. The examiner found that Brown's thoracolumbar spin condition would cause him to suffer "pain in the lower back shooting to left leg needing frequent breaks," that he "has to stop every 2 hours when he drives due to pain," and that he is unable to work in the yard or use a lawn mower. R. 444, 552.

Medication records indicate Brown was prescribed several medications, including Meloxicam for pain and inflammation from January 2012 to February 2014, Hydrocodone/Acetaminophen tablets for pain from August 2012 to February 2013,

Gabapentin for nerve pain from January 2012 to January 2013, and Lyrica between December 2012 and March 2013.  R. 605-615, 637, 659.  On December 19, 2012, Brown received a new lower back brace.  R. 420.

On February 8, 2013, Brown returned to Dr. Marsden, his primary care physician at CAHCS, complaining of chronic pain in the left leg and foot at a pain level of 6.  R. 523.  Dr. Marsden found that Brown's disc degeneration, myofascial pain syndrome, carpal tunnel syndrome, low back pain, tendinitis, and other medical conditions were stable and recommended that he continue taking his prescribed medication, including Hydrocodone 7.5/Acetaminophen 325 mg tablets.  R. 515-516.  On February 8, 2013, a psychologist recommended that Brown increase physical activities.  R. 636.  On February 11, 2013, a nurse noted Brown's pain level as 4.  R. 634.

In this case, the ALJ articulated good cause for discounting Dr. Peden's opinion.  The medical records indicate that pain medication alleviated some of Brown's symptoms and that he reported few side effects.  Nothing in the record indicates that Dr. Peden or any other physician recommended that Brown refrain from work or other physical activity during the relevant time period.  In fact, the medical records indicate medical personnel encouraged Brown to engage in physical activity.  The court recognizes that Brown suffers from pain as the result of his back and neurological conditions; the medical records, however, do not support Dr. Peden's opinion that Brown's limitations are as extreme as alleged.  This court therefore concludes that the ALJ's assignment of "little weight" to Dr. Peden's opinion that Brown suffers from extreme limitations on the basis that his conclusions are inconsistent with

the medical records is supported by substantial evidence.

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled.  Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.

A separate order will be entered.

DONE this 4th day of January, 2016.

                                            /s/ Terry F. Moorer
                                            TERRY F. MOORER
                                            UNITED STATES MAGISTRATE JUDGE